IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| DEAN A. HARRELL, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV-04-472-S-MHW |
| | ) | |
| v. | ) | **MEMORANDUM ORDER** |
| | ) | |
| WARDEN FISHER, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Pending before the Court in this habeas corpus action are the following Motions: Petitioner's Motion for Summary Judgment (Docket No. 12), Respondent's Motion for Partial Summary Dismissal (Docket No. 14), and Respondent's Motions to Stay Time to File Motion for Summary Judgment and Stay Disposition of Petitioner's Summary Judgment Motion (Docket Nos. 21 and 22).

MEMORANDUM ORDER  1

I.

# MOTION FOR PARTIAL SUMMARY DISMISSAL

## A.  Standard of Law Governing Motions to Dismiss

Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court."  In such case, the Court construes the facts in a light most favorable to the petitioner.  When a court is considering a motion to dismiss, it may take judicial notice of facts outside the pleadings.  *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1281 (9th Cir. 1986).[1]  A court may look beyond the complaint to matters of public record, and doing so does not convert a motion for summary dismissal into a motion for summary judgment.  *Id.*  Accordingly, the Court shall take judicial notice of those portions of the state court record lodged by the parties.

## B.  Procedural Default

Respondent argues that the following ineffective assistance of counsel claims asserted in the Petition are procedurally defaulted:  Claim One(5), that trial counsel failed to subpoena Dr. Wood to testify at trial; Claim Two(3), that appellate counsel failed to raise the issue of impeachment evidence against the victim; Claim Two(4), that appellate counsel did not raise the issue of the court's failure to sua sponte give a lesser-included-

---

[1]*abrogated on other grounds by Astoria Federal Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S.Ct. 2166 (1991).

offense instruction to the offense of rape; and Two(5), that appellate counsel failed to appeal the issues related to the rape kit and the doctor's report.[2]

A petitioner is required to exhaust his state court remedies before pursuing a claim in a federal habeas petition. 28 U.S.C. § 2254(b). To exhaust a claim, a habeas petitioner must have fairly presented it to the highest state court for review in the manner prescribed by state law. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Unless a petitioner has exhausted his state court remedies relative to a particular claim, a federal district court cannot grant relief on that claim.

State remedies are considered technically exhausted, but not *properly* exhausted, if a petitioner failed to pursue a federal claim in state court and there are no remedies now available. *O'Sullivan*, 526 U.S. at 848. A claim may also be considered exhausted, though not properly exhausted, if a petitioner pursued a federal claim in state court, but the state court rejected the claim on an independent and adequate state law procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 731-732 (1991). Under these circumstances, the claim is considered "procedurally defaulted" and cannot not be heard in federal court unless the petitioner shows either that there was legitimate cause for the default and that prejudice resulted from the default, or, alternatively, that the petitioner is actually innocent and a miscarriage of justice would occur if the federal claim is not heard. *Coleman,* 501 U.S. at 731.

---

[2]These claim numbers correspond to those Petitioner used in his Motion for Summary Judgment (Docket No. 12).

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To show "prejudice," a petitioner bears "the burden of showing not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

If a petitioner cannot show cause and prejudice for his procedural default, he can still bring the claim in a federal habeas petition if he demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice," which means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Murray v. Carrier*, 477 U.S. at 496.  To satisfy this standard, a petitioner must make a colorable showing of factual innocence. *Herrera v. Collins*, 506 U.S. 390, 404 (1993).  A petitioner must bring forward new evidence not presented at trial which tends to show his innocence, whereupon the Court must then determine whether, "in light of the new evidence, no juror, acting reasonably, would have voted to find [the defendant] guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995).  Upon such a showing, a petitioner may proceed with his claims, provided that his claim of actual innocence is accompanied by an assertion of nonharmless constitutional error at trial. *Id.* at 316.

1. Claim One(5)

MEMORANDUM ORDER  4

Claim One(5) is that "trial counsel failed to subpoena Dr. Wood to testify at trial," which Petitioner alleges was ineffective assistance of counsel. In his Motion for Summary Judgment, Petitioner more fully describes this claim as follows:

> Trial counsel failed to subpoena Dr. Wood to testify at trial on rape. Harrell has a right under the Sixth Amendment Due Process Rights to effective assistance of counsel during trial. Trial counsel failure to subpoena Dr. Frederick L. Wood violated these rights. At trial, counsel read into evidence (jury tr. p. 17 ls. 1-25) Dr. Woods' written statement and report. If the medical expert would have testify he would say there was nothing medically consistent with S.K. victim's claim of rape. See exhibit (1) in any rape case the first rule of evidence is the doctor himself not his report if Dr. Woods would have been at trial there would have been no doubt the jury would have found a different verdict.

*Petitioner's Motion for Summary Judgment*, at pp. 10-11 (Docket No. 12).

Upon a review of Petitioner's briefs on direct appeal and in the post-conviction case, the Court does not find any mention of this claim. *See State's Exhibits B-1 and D-1*. It is now too late to bring this claim before the state courts. Accordingly, this claim is procedurally defaulted. The Court next considers whether prejudice resulted from the default.

At trial, the parties entered into a stipulation that Dr. Wood's Emergency Room medical report would be admitted into evidence and placed in the juror's trial notebooks. *State's Exhibit A-2*, at 16:17-19 (stipulation at trial); *Petitioner's Motion for Summary Judgment*, at pp. 21-22 (copy of Dr. Wood's report). Petitioner argues that Dr. Wood would have testified that "there was nothing medically consistent with S.K. victim's claim of rape." The report from Dr. Wood stated: "Examination of the genitalia shows

MEMORANDUM ORDER  5

normal appearance and normal hair distribution." *Id*. at p. 22.  The report also states: "A rape kit, gathering for evidence is performed in the normal manner." *Id*.

The report itself, which was made a part of the juror's trial notebooks, does not contain evidence that Petitioner was raped.  However, there is nothing in the record demonstrating that Dr. Wood would have testified that the examination showed that the victim was *not* raped.  That is merely Petitioner's own speculation.  Because Petitioner has failed to show that Dr. Wood's live testimony would have been more supportive of Petitioner's position than Dr. Wood's report, no prejudice is shown.

Because Petitioner has not shown prejudice, the Court does not consider cause.  In addition, there is no showing of actual innocence in the record.  As a result, the procedural default of this claim cannot be excused.  This claim shall be dismissed with prejudice.

    2.  <u>Claim Two(3)</u>

Claim Two(3) is that appellate counsel failed to raise the issue of impeachment evidence against the victim on direct appeal.  Petitioner more fully describes this claim as follows:

> The state turned over to Harrell's first defense counsel the public defender officer.  Garret's Affidavit in support of the Complaint (R.P. 47) and exhibit (3) in that affidavit Officer Garret claimed that S.K. victim had stated that the attacker had ejaculated. (R.P. 47).  This affidavit was never forwarded from Harrell's first counsel to his second (R.P. 47).  The combined failure of first and second counsel – both in essence combining to form trial counsel – had immense ramifications.  At trial, S.K. victim testified that she didn't know whether her attacker ejaculated indeed not knowing that this affidavit existed.  Trial counsel entered into a stipulation

MEMORANDUM ORDER  6

>with the prosecutor that the medical evidence would show no semen was found in S.K. victim and that this was not inconsistent with a rape. This stipulation was read into evidence (jury tr. p. 17 ls. 1-25). Had appellant counsel raised this issue the outcome would have been different.

*Petitioner's Motion for Summary Judgment*, at p. 15.

Petitioner did not raise this claim in his brief on review of the dismissal of the post-conviction action. *See State's Exhibit D-1*. Rather, the issue was raised as an ineffective assistance of *trial* counsel claim, which is Petitioner's Claim One(3). *See id.*, at pp. 12-15. The issue as an error of *appellate* counsel is procedurally defaulted. The Court will defer a determination of whether prejudice exists, because that question will be answered when the Court considers the merits of Claim One(3). This claim shall be conditionally dismissed.

    3.    <u>Claim Two(4)</u>

Claim Two(4) is that appellate counsel did not raise the issue of the court's failure to sua sponte give a lesser-included-offense instruction to the offense of rape. Petitioner raised this claim as ineffective assistance of *trial* counsel, not *appellate* counsel, in the post-conviction appeal. *See State's Exhibit D-1*, at pp. 20-22. This claim, as ineffective assistance of trial counsel, is raised in the Petition as Claim One(4). Therefore, as above, the Court concludes Claim Two(4) is procedurally defaulted, but it shall be conditionally dismissed, pending the outcome of the merits of Claim One(4).

    4.    <u>Claim Two(5)</u>

MEMORANDUM ORDER  7

Claim Two(5) is that appellate counsel failed to appeal the issues related to the rape kit and the doctor's report on rape. Petitioner explains this claim as follows:

> Appellate counsel has a duty to represent his or her clients to the best of their ability. [When] appealing any rape case the first things that come to min[d] is the evidence the (rape kit) see exhibit (2) (doctor's report) exhibit 1 (DNA testing) exhibit (4), and last (Officer Allen Garret's affidavit in support of the complaint) exhibit (3). In any rape case these issues must and should be the first issue on appeal.

*Petitioner's Motion for Summary Judgment*, at p. 16.

This claim was not raised on post-conviction appeal. *See State's Exhibit D-1*. It is procedurally defaulted, and requires a showing of cause and prejudice. On post-conviction appeal, post-conviction counsel for Petitioner asserted that appellate counsel had raised three direct appeal claims that obviously would not have led to success on appeal, and that appellate counsel should have raised three different issues instead. Petitioner's assertions that the rape kit and the doctor's report should have been challenged on appeal were *not* among the more meritorious issues that post-conviction counsel chose to argue as potentially meritorious appeal issues. Similarly, this Court does not see the merit of Plaintiff's alleged issues for appeal in light of the evidence presented at trial.

The jury heard many admissions from Petitioner that inculpated him. For example, during cross-examination, Petitioner testified as follows:

> Q. I'll hand you State's Exhibit 9; do you recognize that?
>
> A. Yes, I do.

MEMORANDUM ORDER  8

Q. What is it?

A. It's my written statement.

Q. Now, if I remember that tape correctly, it was Randy Kidd who requested that you write that statement, was it not?

A. Yes.

Q. And Randy Kidd gave you a paper and a pen to write on?

A. Yes.

Q. And then didn't Randy Kidd leave the room?

A. Yes.

Q. And you were in there for, I don't know. I didn't time it. Let's say six to eight minutes, would you agree with that time span?

A. Yes.

Q. And that is when you wrote that particular statement?

A. Yes.

Q. How exactly was Randy Kidd coercing you and intimidating you when he wasn't even in the room?

A. By then, I was just confused and I was just trying to write what I had done said. I mean, trying to just . . .

Q. Well, may I approach and take the exhibit your Honor?

The Court:   Yes.

A. How do you write a lot down?

Q. Well, I don't remember you ever saying to Randy Kidd that we were sitting on the couch talking for a little while, and

MEMORANDUM ORDER  9

        then we started to kiss and fooling around, and we were taking off clothes, and got about three-quarters of our clothes off. You did say that. Everything was going good, and the next minute, everything got out of hand, and she started telling me she didn't want to. She wanted to go to bed, and that is when it got out of control. That is your own writing, isn't it?

    A.    Yes.

    Q.    That is not anything that Randy Kidd put into your mouth, is it?

    A.    No.

    Q.    So now you are telling the jury today that you lied for 50-some minutes in an audio tape, and you lied when you wrote this statement?

    A.    Yes.

    Q.    And you did all that because you're confused?

    A.    Yes.

*State's Exhibit A-2*, *Trial Transcript*, at 339-342. The foregoing colloquy refers to an audio tape of Petitioner's interview with police officers where Petitioner made many similar statements, as well as a statement that he would "hate going to jail for something [he] didn't mean to do." *Id*. at 337:14-17.

     Despite such evidence, Petitioner argues that testimony about the rape kit and the emergency room doctor's report would have made a difference. The standard of law for a showing of "prejudice" requires a petitioner to show "not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and

MEMORANDUM ORDER  10

substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *Frady*, 456 U.S. at 170.  Here, the parties stipulated that the rape kit revealed no semen in the victim's vagina.  The doctor's report showed no physical evidence of rape.  It is unclear what Petitioner thought should be challenged on appeal regarding the rape kit and the doctor's report, which, as presented at trial, were either neutral or favorable to him on the issue of rape.  Even if such evidence had been presented as testimony rather than by stipulation (and it is unclear what such evidence would be), it falls far short of the *Frady* standard of prejudice in light of the evidence that *was* presented at trial.

Because Petitioner has shown no prejudice as a result of the default of this claim, his procedural default is not excused, and this claim shall be dismissed with prejudice.

## II.

## OTHER MOTIONS

Respondent has filed a Motion to Stay Time to File Respondent's Motion for Summary Judgment (Docket No. 21).  Good cause appearing, the Motion shall be granted.  Respondent shall file his motion for summary judgment on the remaining claims no later than January 13, 2006.  Petitioner shall have thirty (30) days to respond, and Respondent shall thereafter file a reply within fourteen (14) days, if desired.

Petitioner's Motion for Summary Judgment (Docket No. 12) shall be denied as to the foregoing claims.  The Court will reconsider Petitioner's arguments on the remaining claims when Respondent's summary judgment motion on the remaining claims has been

MEMORANDUM ORDER  11

fully briefed by both parties. As a result, Respondent's Motion to Stay Disposition of Petitioner's Summary Judgment Motion (Docket No. 22) is moot.

### III.

### ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

A    Petitioner's Motion for Summary Judgment (Docket No. 12) is DENIED as to Claims One(5), Claim Two(3), Claim Two(4), and ClaimTwo(5). The Court shall reconsider the remaining claims in the Petition for Writ of Habeas Corpus (as more fully explained in Petitioner's Motion for Summary Judgment) when Respondent's Motion for Summary on the remaining claims is fully briefed.

B.    Respondent's Motion for Partial Summary Dismissal (Docket No. 14) is GRANTED. Claims One(5) and Two(5) are dismissed with prejudice; Claims Two(3) and Two(4) are conditionally dismissed.

C.    Respondent's Motion to Stay Time to File Motion for Summary Judgment (Docket No. 21) is GRANTED. Respondent shall file his motion for summary judgment on the remaining claims no later than **January 13, 2006.** Petitioner shall have thirty (30) days to respond, and Respondent shall thereafter file a reply within fourteen (14) days, if desired.

D.    Respondent's Motion to Stay Disposition of Petitioner's Summary Judgment Motion (Docket No. 22) is MOOT.



DATED: October 14, 2005

Honorable Mikel H. Williams
United States Magistrate Judge